**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Amanda Perry, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.   17 C 7601 |
| JTM Capital Management, LLC, a Delaware limited liability company | ) ) ) ) | Judge Gettleman Magistrate Judge Gilbert |
| Defendant. | ) | |

| | | |
|---|---|---|
| Theresa Mullery, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 17 C 7769 |
| JTM Capital Management, LLC, a Delaware limited liability company, | ) ) ) ) | Judge Gettleman Magistrate Judge Gilbert |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS OR TO TRANSFER VENUE**

Plaintiffs, Amanda Perry ("Perry") and Theresa Mullery ("Mullery"), hereby respond to Defendant JTM Capital Management's ("JTM") Motions to dismiss pursuant to Fed. R. Civ. P. Rules 12(b)(2), 12(b)(3), and/or 12(b)(6), or, in the alternative, to Transfer Venue (Perry, Dkt. 8, Mullery, Dkt. 9):

**FACTUAL BACKGROUND**

**A.    Amanda Perry**

On August 27, 2015, Ms. Perry, a disabled woman and resident of South Carolina, exercised her right to direct her attorneys at the Chicago Legal Clinic's Legal

1

Services for Seniors and People with Disabilities (LASPD) to inform Comenity Bank ("Comenity") that she refused to pay the debt she allegedly owed to it, and that all future communications had to be directed to her attorneys, see, Perry, Dkt. 1, ¶ 9, Dkt. 1-3. Subsequently, Defendant JTM obtained her alleged defaulted Comenity account, ignored the information in the account notes that told it, as the successor-in-interest, that Ms. Perry had refused to pay the debt and that it could no longer call or write her directly, and another debt collector, Weltman, Weinberg & Reis, to send her a collection letter, dated March 4, 2017, demanding payment of the Comenity debt, see, Perry, Dkt. 1, ¶10, Dkt. 1-4.

### B.     Theresa Mullery

On April 21, 2015, Ms. Mullery, a senior citizen and resident of the State of New York, exercised her right to direct her attorneys at LASPD to inform Continental Finance Company ("Continental") that she refused to pay the debt she allegedly owed to it, and that all future communications had to be directed to her attorneys, see, Mullery, Dkt. 1, ¶ 9, Dkt. 1-3.  Subsequently, Defendant JTM bought/obtained her alleged defaulted Continental account, ignored the information in the account notes that told it, as the successor-in-interest, that Ms. Mullery had refused to pay the debt and that it could no longer call or write her directly, and directed a debt collector, Northstar Location Services, to send her a collection letter, dated January 26, 2017, demanding payment of the Continental debt, see, Mullery, Dkt. 1, ¶10, Dkt. 1-4.

### C.     Perry And Mullery

Both Plaintiffs' Complaints set forth that Defendant violated §1692c(c) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), which prohibits a

debt collector from communicating with a consumer after a direction to cease communications, and §1692c(a)(2) of the FDCPA, which prohibits a debt collector from communicating with a consumer if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, see, Perry, Dkt. 1, ¶¶ 15-22; Mullery, Dkt. 1, ¶¶ 15-22.

Defendant JTM now argues that it is not subject to personal jurisdiction in this Court or, in the alterative, that venue here is improper, based on the district court opinion in Price v. Schlee & Stillman, 2017 U.S. Dist. LEXIS 81245 (N.D. Ill. 2017) (Durkin, J.), revised by Price v. Schlee & Stillman, 2017 U.S. Dist. LEXIS 102279 (N.D. Ill. 2017), see, Perry, Dkt. 8, at pp. 3-8; Mullery, Dkt. 9, at pp. 3-8.  Price, however, is factually inapposite and in no way applies to this matter.

Moreover, Defendant also argues, based on the recent United States Supreme Court opinion in, Henson v. Santander Consumer USA, 137 S. Ct. 1718, 198 L.Ed.2d 177 (2017), that Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12b(6) because JTM is not a debt collector subject to the FDCPA, see, Dkt. 8, at pp. 9-15.  The principal, and indeed sole purpose of Defendant's business is the collection of debts, and Henson does not exempt such entities from compliance with the FDCPA. For these reasons, Defendant's motion (Dkt. 8) should be denied.

**ARGUMENT**

When a defendant files a Fed.R.Civ.P. Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff is required to establish a prima facie case of personal jurisdiction, see, De David v. Alaron Trading Corp., 796 F. Supp. 2d 915, 925 (N.D. Ill.

3

2010)(Gettleman, J.), citing, Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 713 (7th Cir. 2002).

Personal jurisdiction can be general or specific, see, Johnson v. Hartwell, 2017 U.S.App.LEXIS 10298, 690 F. App'x 412 (7th Cir. 2017). For a court to exercise general personal jurisdiction, the defendants must have had continuous and systematic contacts with the forum state, while specific jurisdiction requires that the claims in the lawsuit arise from the defendants' contacts with the forum state, see, Johnson, 690 F.App'x at 412-413. General jurisdiction over a defendant, which means that the defendant can be required to answer any claim that arose anywhere in the world, requires that the defendant be "essentially at home" in the forum, see Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011).

In evaluating a motion to dismiss for lack of personal jurisdiction, "the allegations in the complaint are to be taken as true unless controverted by the defendants' affidavits; and any conflicts in the affidavits are to be resolved in [the plaintiff's] favor", see, Turnock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987). If the defendant does submit affidavits or other evidence in opposition, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction.", see, Purdue Research Foundation v. Sanofi-Synthelabo, 338 F.3d 773, 783 (7th Cir. 2003); see also, De David, 796 F. Supp. at 925.

Similarly, Fed.R.Civ.P. Rule 12(b)(3), which allows for dismissal for improper venue, requires the district court to assume the truth of the allegations in the plaintiff's complaint, unless contradicted by the defendant's affidavits, see, Deb v. Sirva, Inc., 832 F.3d 800, 803 (7th Cir. 2016). Therefore, as with a 12(b)(2) motion, in evaluating a 12(b)(3) motion to dismiss for improper venue, a court need not view the allegations of

the complaint as the exclusive basis for its decision, see, Id.

A Rule 12(b)(6) motion tests the sufficiency of the complaint, not the merits of the case, see, Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). The Court must accept the complaint's well-pleaded factual allegations as true and draw all reasonable inferences in plaintiff's favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). To survive a motion to dismiss, a complaint must contain sufficient facts to state a facially plausible claim to relief. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

I. **Defendant JTM Has Had Significant Contacts With The State Of Illinois That Subject It To General Personal Jurisdiction.**

When a district court is asked to rule on a defendant's motion to dismiss based on the submission of written materials without benefit of an evidentiary hearing , the plaintiff "need only make out a prima facie case of personal jurisdiction", see, Purdue, 338 F.3d at 782; see also, Hyatt International Corp. v. Coco, 302 F.3d 707, 713 (7th Cir. 2002).

As the Seventh Circuit noted in In re: LimitNone, LLC, 551 F.3d 572 (7th Cir. 2008):

> A corporation is deemed to reside in any district "in which it is subject to personal jurisdiction at the time the action is commenced." *Id.* § 1391(c). **[Defendant] is licensed to do business in the State of Illinois and does business in the Northern District of Illinois. We have no doubt that the federal court sitting in that district had personal jurisdiction over [defendant] when [plaintiff] filed its complaint**. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Kinslow v. Pullara*, 538 F.3d 687, 690-91 (7th Cir. 2008).

In re: LimitNone, 551 F.3d at 575 (emphasis added).

As set forth in both Plaintiff's Complaints, it was alleged that:

5

> 6. Defendant JTM is authorized to conduct business in Illinois, and maintains a registered agent here, see, record from the Illinois Secretary of State, attached as Exhibit A. In fact, Defendant JTM conducts business in Illinois.

(Mullery Dkt. 1 at ¶ 6; Perry Dkt. 1 at ¶ 6). Thus, both Plaintiffs have alleged facts to show that this Court has personal jurisdiction over Defendant JTM.

In its motion, Defendant JTM provided absolutely no evidence to contradict this assertion – such as a sworn statement from one of Defendant's principals that it does not collect debts in Illinois, or that it restricts its debt collection business to certain States and none of them are Illinois, and that it simply registered to do business, and obtained a license as a collection agency, in Illinois by accident.

Instead, JTM simply claimed that it "does not have any contacts with the State of Illinois", see, Perry, Dkt. 8, at p. 3, Mullery, Dkt. 9, at p. 3. This, however, is not consistent with JTM's responses to the limited discovery Plaintiffs were granted leave to conduct. In fact, Defendant JTM has admitted that it purchased 13,230 accounts with a face value of approximately $10,700,000 belonging to consumers with Illinois addresses during 2016, and 13,387 accounts with a face value of $11,000,000 belonging to consumers with Illinois addresses during 2017. A copy of Defendant's supplemental responses to these limited discovery requests are attached as Exhibit A, see, Interrog. Responses Nos. 3-4[1].

In Brennon v. Nationwide Credit, 2011 U.S. Dist. LEXIS 161564 (N.D. Ill. 2011)(Gettleman, J.)(attached as Exhibit B), this Court addressed nearly identical

---

1. Defendant JTM initially objected to providing answers to *any* of the discovery sought by Plaintiff, even though this Court specifically granted Plaintiff Mullery leave to take such limited discovery in open court on November 21, 2017. Only after a Fed.R.Civ.P. Rule 37 conference were responsive answers provided to some interrogatories.

arguments as to personal jurisdiction in light of a similarly situated consumer.  Brennon involved a North Carolina consumer plaintiff had engaged the lawyers at Chicago's LASPD program to direct her collectors, including the defendant Georgia corporation and collector, that she refused to pay the debt and that all future communications should be directed to her attorneys, see, Brennon, 2011 U.S. Dist. LEXIS 161564, at [*1]-[*2].  The defendant, nonetheless, contacted the consumer directly in an attempt to collect the debt, see, Id.  This Court found that, pursuant to 28 U.S.C. §1391(d), venue was proper in the State of Illinois because, for purposes of personal jurisdiction, the defendant corporation resided in Illinois, see, Brennon, 2011 U.S. Dist. LEXIS 161564, at [*3]-[*4].

Specifically, this Court found that the Georgia-based collector's license to collect debts in Illinois and its attempts to collect debts from hundreds of thousands of Illinois consumers constituted sufficient contacts with Illinois such that the consumer's action in Illinois did not "offend traditional notions of fair play and substantial justice.", see, Id., citing, International Shoe v. Washington, 326 U.S. 310, 316, (1945).

Similarly, in a well-reasoned and thorough opinion in a similar matter involving a lawsuit brought in the Northern District of Illinois by consumer plaintiffs (and LASPD clients) who lived in Florida and Arizona against two Minnesota-based debt collectors, Judge Gottschall concluded that, based on the uncontroverted allegations that the debt collectors were registered to do business in Illinois and collected debts in Illinois, her court had general personal jurisdiction over the debt collectors, see, Lefler v. Razor Capital, N.D.Ill. No. 1:13-cv-2242, Order dated June 3, 2013, attached as Exhibit C.

Indeed, many Judges in this district have denied factually identical motions to

dismiss or transfer cases on the basis of jurisdiction or venue in other matters in which neither the consumer resided, nor the debt collector was headquartered, in the Northern District of Illinois, see, e.g., Garrigan v. Midland Credit Management, N.D.Ill. No. 1:09-cv-3110, Order dated March 19, 2010 (Nordberg, J.), attached as Exhibit D; Hinkle v. Allied Interstate, N.D.Ill. No. 1:09-cv-5004, Order dated October 21, 2009 and transcript of hearing (Leinenweber, J.), attached as Exhibit E; Barksdale v. G.C. Services, N.D.Ill. No.1:09-cv-7309, Order dated May 6, 2010 (Andersen, J.), attached as Exhibit F;; Tiramani v. MRS BPO, N.D.Ill. No.1:13-cv-2930, Order dated August 13, 2013 (Chang, J.), attached as Exhibit G.

Defendant's rely, instead, on Price, where the court granted a motion to transfer, concluding that there was a lack of personal jurisdiction, but Price is inapposite. The consumer plaintiff in Price did not conduct discovery as to general personal jurisdiction and the defendant collector's contacts with Illinois, see, Price, 2017 U.S. Dist. Lexis 102279 at [*7]-[*8]. In fact, it is clear that not obtaining discovery as to the collector's business dealings within the State of Illinois was instrumental in the district court's opinion when it distinguished the facts of this Court's holding in Brennon when it explained that "at the time the suit [Brennon] was filed the defendant was attempting to collect debts from hundreds of thousands of Illinois consumers, including consumers residing this district", see, Price, 2017 U.S. Dist. Lexis 102279, at [*5], FN 3.[2]

As the district court in Price held, and Defendant briefly notes (see, Dkt. 8, p. 4 FN 2), the U.S. Supreme Court more recently addressed personal jurisdiction in Daimler

---

[2] While completely ignoring this Court's opinion in Brennon, Defendant's motion repeatedly incorrectly asserts that "this Court" decided Price when, in fact, it is the opinion of Judge Durkin, see, e. g., Dkt. 8 at p. 3.

8

AG v. Bauman, 134 S.Ct. 746 (2014), which held that contacts with a forum state must be so continuous and systematic as to render it "at home" in the forum state, see, Daimler, 134. S.Ct. at 762, citing, Goodyear Dunlop Tires Operations v. Brown, 564 U. S. 915 (2011)(where the cause of action had occurred in France).  Daimler involved a lawsuit filed in California by 22 Argentinean plaintiffs who alleged that a subsidiary of the defendant had collaborated with Argentinean state forces to kidnap, torture, and kill workers as part of Argentina's ongoing "Dirty War", alleging that personal jurisdiction was established because the defendant sold cars in California.

The activities at issue in Daimler -- selling cars in the forum state versus allegedly engaging in labor practices that supported torture, kidnap, and murder in a foreign country -- are in no way congruent to this case, where Defendant has admitted to purchasing a significant amount of consumer debt allegedly owed by Illinois consumers, see, Exhibit A at Interrog. No.s 3 and 4.[3]  That the standard for certain international causes of action had been heightened by Daimler does not alter this Court's finding in Brennon as to personal jurisdiction involving a collector like Defendant JTM with substantial and continuous contacts with Illinois, a license to collect debts in Illinois, and attempts to collect millions of dollars from tens of thousands of Illinois consumers through its activities.  For all of these reasons, Defendant JTM is subject to the general personal jurisdiction of this Court and dismissal pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3) is not warranted.

---

3. Defendant's assertion, that it "merely owns accounts and does not take any action in Illinois", see, Exhibit A at Interrog. No.s 3 and 4, does not pass the "straight-face test". There is no reason to own millions of dollars in defaulted consumer debt other than to attempt to collect on it – which Defendant JTM does by hiring other debt collectors.

Venue is also appropriate here , as Defendant's illegal debt collection actions were directed, in large part, to the Northern District of Illinois. The cease communications/cease collection/notice of attorney representation letters, which Defendant ignored, was sent by Plaintiff's Chicago-based legal aid attorneys and their main witnesses will be LASPD's attorneys and paralegals and their documents. The convenience of the parties and witnesses and the interests of justice – factors for this Court to consider in determining whether venue its appropriate here – militate in favor of maintaining this matter in the Northern District of Illinois. Additionally Plaintiffs chose to litigate their FDCPA claim here -- a choice of forum is entitled to deference, see, FDIC v. Citizens Bank & Trust Co. of Park Ridge, 592 F.2d 364, 368 (7th Cir. 1979).

## II.     Defendant Is A "Principal Purpose" Debt Collector Subject To the FDCPA

Defendant attempts to argue that it is "not a debt collector" pursuant to the FDCPA, but this position represents a gross misreading of the U.S. Supreme Court's recent opinion in Henson v. Santander Consumer USA, 137 S. Ct. 1718, 198 L.Ed.2d 177 (2017), which explained that there are two definitions within the FDCPA of a debt collector: 1) principal purpose debt collectors and, 2) those collecting on behalf of another, see, 15 U.S.C. §1692a(6), Henson, 137 S.Ct. at 1721-1722. The Supreme Court exclusively addressed the second statutory definition: those collecting a debt on behalf of another, see, Henson, 137 S.Ct. at 1721-1722, expressly noting that it was not addressing the first prong of the definition:

> . . . . we pause to note two related questions we do not attempt to answer today . . . Second, the parties briefly allude to another statutory definition of the term "debt collector"  --  one that encompasses those engaged in "any business the principal purpose of which is the collection of any debts." §1692a(6). But the parties haven't much litigated that alternative definition and in granting certiorari we didn't agree to address it either.

See, Henson, 137 S. Ct. at 1721. Henson concluded that Santander, a lender that purchased, some defaulted debts (along with many accounts that were current) to collect, was not a "debt collector" under the FDCPA pursuant to the second prong of the definition, see, Henson, 137 S.Ct. at 1721-1722.

Here, however, the principal, and indeed sole purpose of Defendant JTM's business is the profiting from its purchases of defaulted consumer debts, through their collection by third-parties such as Weltman and Northstar, and Henson does not exempt such entities from compliance with the FDCPA. Although Defendant JTM's motion acknowledges that the FDCPA contains two statutory definitions of a debt collector, it still somehow manages to conflate the two:

> [I]n order to state a claim against JTM herein, Plaintiff must plausibly allege that JTM meets the alternate, "principal purpose" definition of "debt collector." As set forth below, Plaintiff has failed to do so because the Complaint is devoid of any factual allegation that JTM took any steps to collect on the Plaintiff's account or takes efforts to collect on debt it owns at all.

See, Perry, Dkt. 8, at p. 10, Mullery, Dkt. 9, at p. 10.

Thus, according to JTM and the non-binding authority upon which it relies[4], in

---

[4] See, Perry, Dkt. 8, at pp. 10-11, Mullery, Dkt. 9, at pp. 10-11. The only case within the Seventh Circuit cited by Defendant JTM is Kasalo v. Trident Asset Management, 53 F. Supp. 3d 1072, at 1076-79 (N.D. Ill. 2015)(Kennelly, J.), which, again, was not decided by "this Court", as Defendant wrongly asserts (Perry, Dkt. 8, p. 11, Mullery, Dkt. 9, p. 11). Moreover, as Defendant JTM acknowledges, Kasalo was decided after the completion of discovery, on cross motions for summary judgment, see, Perry, Dkt. 8, p. 11; Mullery, Dkt. 9, p. 11, Kasalo, 53 F. Supp. 3d at 1076. More importantly, as in Henson, the parties in Kasalo -- which was decided long before the Supreme Court's ruling in Henson -- did not argue in detail, nor did the court discuss, whether the debt-buyer defendant, which indirectly benefited from the third-party collections it outsourced, met the principal purpose collector definition set forth in §1692a(6) of the FDCPA, see, Kasalo, 53 F. Supp. 3d at 1079. Similarly, Gold v. Midland Credit Mgmt., 82 F. Supp. 3d 1064 (N.D. Cal. 2015), another pre-Henson opinion was decided on cross motions for summary judgment after extensive discovery, see, Id., at 1068-69, yet barely

11

order to meet the definition of a debt collector, an entity must either <u>directly</u> collect debts owed to another or <u>directly</u> collect debts owed to itself.  This position fails to take into account that §1692a(6) also applies to the indirect collection of debts conducted through outsourcing collection to third-party entities, as JTM has done here, <u>see</u>, §1692a(6).  In fact, JTM's position is directly contrary to the Seventh Circuit's decision in <u>Janetos v. Fulton Friedman & Gullace</u>, 825 F. 3d 317, 321 (7th Cir. 2016), which found that debt buyers are liable for their debt collection agency's actions, <u>see</u>, <u>Janetos</u>, 825 F.3d at 325.

Judge Aspen's recent well-reasoned decision in <u>Skinner v. LVNV Funding</u>, 2018 U.S. Dist. LEXIS 2812 (N.D. Ill. January 8, 2018)(Aspen, J.), actually supports plaintiffs' contention that Defendant JTM is a debt collector subject to the FDCPA.  In <u>Skinner</u>, the court held that it is possible for a debt buyer to be considered a "principal purpose" collector subject to the FDCPA, <u>see</u>, <u>Skinner</u>, 2018 U.S. Dist. LEXIS 2812, at [*8]-[*10].

<u>Skinner</u> involved a motion for summary judgment, where after discovery, the only evidence presented by the consumer plaintiff as to whether the defendant was a principal purpose debt collector was a list of hundreds of collection lawsuits the debt buyer had filed in Cook County during July of 2017, and a State of Illinois collection

---

discussed the principal purpose of the defendant debt buyer's indirect debt collection through third-party collectors, <u>see</u>, <u>Id</u>., at 1071.  <u>See</u> also,  <u>McAdory v. M.N.S & Assocs.</u>, 2017 U.S. Dist. LEXIS 182472 (D.Ore. 2017), <u>cited</u> at <u>Perry</u> Dkt. 8, at pp. 10-11, <u>Mullery</u> Dkt. 9, at pp. 10-11, which was filed prior to the U.S. Supreme Court's decision in <u>Henson</u> and was decided on a motion to dismiss; there is currently pending in <u>McAdory</u> a motion for leave to file a Second Amended Complaint, to allege more clearly that the debt collector there has the collection of debts as its principal purpose, <u>see</u>, <u>McAdory v. M.N.S & Assocs.</u>, D.Ore. Case No. 3:17-cv-00777-HZ at Dkt. 29.  Finally, <u>McAdory</u> is contrary to the Seventh Circuit's decision in <u>Janetos v. Fulton Friedman & Gullace</u>, 825 F. 3d 317, 321 (7th Cir. 2016), which found that debt buyers are liable for their debt collection agency's actions, <u>see</u>, <u>Janetos</u>, 825 F.3d at 325.

12

agency license for the debt buyer, see, Skinner, 2018 U.S. Dist. LEXIS 2812, at [*9]. The court held that this evidence was insufficient to show "principal purpose", explaining:

> While this evidence may establish Defendant's business involves some debt collection, it provides no basis for establishing the percentage of Defendant's operations that involve debt collection as compared to Defendant's operations as a whole. Without any evidence of Defendant's operations as a whole, Plaintiff has failed to establish specific facts needed to establish the portion of Defendant's operations involve debt collection, a prerequisite to proving an entity's principal purpose is debt collection under the FDCPA. Mere conclusory statements claiming LVNV's "*sole* purpose" and "raison d'être is the purchase and collection of defaulted debt" does not meet the required factual showing required at the summary judgment stage.

See, Skinner, 2018 U.S. Dist. LEXIS 2812, at [*10]-[*11].

As examples, the court in Skinner cited Chenault v. Credit Corp., 2017 U.S. Dist. LEXIS 197747 at [*5]-[*6] (E.D. Pa. 2017) (finding that the defendant debt buyer's registration as a collection agency in the state of Utah and its website, which described the company as "a debt collector" that "purchases and collects consumer debt including unpaid retail finance and sales finance credit cards and personal loans.", were sufficient to establish that the defendant there met the "principal purpose" definition pursuant to the FDCPA) and Tepper v. Amos Fin., LLC, 2017 U.S. Dist. LEXIS 127697 at [*2 at ¶4], [*22](E.D. Pa. 2017)(finding that a debt-buyer defendant, which was "exclusively in the business of acquiring and servicing non-performing and semi-performing consumer and commercial loans", was a principal purpose debt collector).

Here, Defendant has objected to answering any discovery as to JTM's principal purpose, see, Exhibit A at Interrog. No. 8, but its motion includes no evidence, nor any affidavits, that would establish that its principal purpose is anything other than the

13

collection of defaulted consumer debts through hiring other entities, such as Weltman or Northstar, as it did with Plaintiffs here, and discovery will likely show that the principal, and indeed only, purpose of Defendant JTM's business is the collection of defaulted consumer debt.[5]

Finally, Defendant argues, based on nothing other than irrelevant, pre-Henson cases[6] and its own *ipse dixit*, that the Plaintiffs here have failed to meet the Iqbal and Twombly pleading standards to allege that JTM meets the requirements of a principal purpose debt collector pursuant to §1692a(6) of the FDPCA, see, Perry, Dkt, 8, at pp. 13-14, Mullery, Dkt. 9, at pp. 13-14.  Defendant asserts that Perry and Mullery needed to allege that JTM communicated directly with Plaintiffs, see, Perry, Dkt. 8, at pp. 14-15, Mullery, Dkt. 9, at pp. 14-15, but this idea was rejected in Skinner, which found that debt

---

[5] As a practical matter, any assertion that JTM buys debt and then holds on to it as some sort of "investment" is a non-starter.  Defaulted consumer debt declines in value as it ages – it is not an "investment", see, McMahon v. LVNV Funding, LLC, 744 F.3d 1010, 1022 (7th Cir. 2014), citing a 2013 study by the FTC: ". . . we know from the FTC that such buyers pay different amounts for debts depending on the age of the debt and the number of previous attempts to collect it . . .", and noting that the FTC's study found that debt buyers paid on average 3.1 cents per dollar of debt for debts that were 3 to 6 years old and 2.2 cents per dollar of debt for debts that were 6 to 15 years old, compared to 7.9 cents per dollar for debts less than 3 years old and that debt buyers paid effectively nothing for accounts that were older than fifteen years.

[6] JTM cites Rosales v. Weltman, 2017 U.S. Dist. LEXIS 62120 at [*5] (N.D. Ill. 2017)(Tharp, J.), which predates Henson and did not involve allegations that any of the defendants met the principal purpose debt collector definition and held that a trust which had acquired a debt prior to default was not a debt collector pursuant to the FDPCA and is entirely inapposite here, see, Rosales, 2017 U.S. Dist. Lexis 62120, at [*5].  Similarly, Foster v. PHH Mortg., No. 15 C 7650, 2016 U.S. Dist. LEXIS 156393, at [*7] (N.D. Ill. 2016) dismissed the FDCPA claims by a *pro se* consumer plaintiff made against a mortgage originator and was entirely unrelated to whether a debt buyer which outsourced collections to a third-party constitutes a principal purpose collector.  Reid v. Am. Traffic Solutions, 2010 U.S. Dist. LEXIS 134518 at [*5] (S.D. Ill. 2010) involved FDCPA claims against an original creditor collecting its own debts and is, therefore, not relevant here.

collection activity of debt buyers who direct third party collectors is still subject to the FDCPA, so long as it constitutes a sufficient portion of the debt buyer's business, see, Skinner, 2018 U.S. Dist. LEXIS 2812, at [*8]-[*11].

JTM also claims that Plaintiffs failed to allege that JTM directed the activities of their third-party collectors sufficient for vicarious liability, see, Perry, Dkt. 8, at pp. 14-15, Mullery, Dkt. 9, at pp. 14-15.  Plaintiffs' Complaints, however, specifically set forth that JTM directed Weltman and Northstar to collect the allegedly debts it had acquired (see, Perry, Dkt. 1, ¶ 10, Mullery, Dkt. 1, ¶ 10).  Moreover, Plaintiffs' Complaints allege that JTM is a principal purpose debt collector, which collects defaulted consumer debts directly or indirectly, that it did not originate, by buying large portfolios of defaulted consumer debts, which it collects through others; this is JTM's principal, if not sole, purpose (see, Perry, Dkt. 1, ¶¶ 4, 5; Mullery, Dkt. 1, ¶¶ 4, 5).

Plaintiffs have met the pleading requirements of Fed.R.Civ.P. 12(b)(6) and should be permitted to obtain discovery as to Defendant JTM's business activities, such that they may argue, as the district court in Skinner held, that a substantial percentage of JTM's business is comprised by the collection of defaulted consumer debts that it did not originate.  Defendant JTM's 12(b)(6) motion to dismiss should be denied.

## CONCLUSION

Defendant JTM is licensed to collect debts in Illinois and purchases defaulted debts belonging to tens of thousands of Illinois consumers each year, with face values of tens of millions of dollars, and has clearly availed itself to general personal jurisdiction in Illinois.  Dismissal or transfer pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3), is unwarranted.  Moreover, discovery will likely show that the collection of defaulted

consumer debt that it did not originate is Defendant JTM's principal purpose and dismissal pursuant to Fed.R.Civ.P. 12(b)(6) is also not appropriate. Defendant JTM's motions should be denied.

                                                   Respectfully submitted,

                                                   Amanda Perry & Theresa Mullery

                                                 By: /s/ David J. Philipps_____

Date:  January 22, 2018

David J. Philipps     (Ill. Bar No. 06196285)
Mary E. Philipps     (Ill. Bar No. 06197113)
Angie K. Robertson (Ill. Bar No. 06302858)
Philipps & Philipps, Ltd.
9760 S. Roberts Road
Suite One
Palos Hills, Illinois 60465
(708) 974-2900
(708) 974-2907 (FAX)
davephilipps@aol.com
mephilipps@aol.com
angie@philippslegal.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 22, 2018 a copy of the foregoing **Plaintiffs' Response to Defendant JTM's Motion To Dismiss Or To Transfer Venue** was filed electronically. Notice of this filing was sent to the following parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

| | |
|---|---|
| Brendan H. Little | blittle@lippes.com |
| Richard M. Scherer | rscherer@lippes.com |
| Lippes, Mathias, Wexler, | |
|    Friedman, LLP | |
| 50 Fountain Plaza | |
| Suite 1700 | |
| Buffalo, New York 14202 | |

/s/ David J. Philipps\_\_\_\_
David J. Philipps
Philipps & Philipps, Ltd.
9760 South Robert Road
Suite One
Palos Hills, Illinois 60465
davephilipps@aol.com