# EXHIBIT A

```
 1              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF NEW YORK
 2

 3   _____
     THERESA MULLERY,              Case No. 1:18-cv-549 (LJV)
 4
     AMANDA PERRY,                 Case No. 1:18-cv-566 (LJV)
 5               Plaintiffs,

 6   vs.                          March 15, 2019

 7   JTM CAPITAL MANAGEMENT, LLC,

 8               Defendant._____
     _____
 9

10              TRANSCRIPT OF ORAL ARGUMENT
        BEFORE THE HONORABLE LAWRENCE J. VILARDO
11              UNITED STATES DISTRICT JUDGE

12
     APPEARANCES:        BROMBERG LAW OFFICE, P.C.
13                       BY: BRIAN L. BROMBERG, ESQ.
                         26 Broadway
14                       21st Floor
                         New York, New York 10004
15                       For the Plaintiffs

16                       LIPPES MATHIAS WEXLER FRIEDMAN LLP
                         BY: BRENDAN HOFFMAN LITTLE, ESQ.
17                          SEAN M. O'BRIEN, ESQ.
                           KELLEN P. COPPOLA, ESQ.
18                       50 Fountain Plaza
                         Suite 1700
19                       Buffalo, New York 14202
                         For the Defendant
20
     LAW CLERK:          LIAM C. HOLLAND, ESQ.
21
     DEPUTY CLERK:       COLLEEN M. DEMMA
22
     COURT REPORTER:     ANN M. SAWYER, FCRR, RPR, CRR,
23                       NYRCR, NYACR, Notary Public
                         Robert H. Jackson Courthouse
24                       2 Niagara Square
                         Buffalo, New York 14202
25                       Ann_Sawyer@nywd.uscourts.gov
```

 1               (Proceedings commenced at 11:32 a.m.)

 2          THE CLERK:  18-CV-549 Mullery versus JTM Capital

 3     Management, LLC, and 18-cv-566 Perry versus JTM Capital

 4     Management, LLC.

 5          Attorney Brian L. Bromberg appearing on behalf of the

 6     plaintiffs.

 7          Attorneys Brendan H. Little, Sean M. O'Brien, and

 8     Kellen P. Coppola appearing on behalf of the defendant.

 9          This is the date set for oral argument.

10          THE COURT:  Okay.  Good morning, everyone.

11          MR. LITTLE:  Good morning, Judge.

12          MR. BROMBERG:  Good morning, Your Honor.

13          THE COURT:  So, Mr. Little, are you arguing?

14          MR. LITTLE:  I am.

15          THE COURT:  Okay.  Come on up.

16          So let me ask you this:  The statute defines "debt

17     collector" as any person who uses any instrumentality of

18     interstate commerce or the mails in any business, the

19     principal purpose of which is the collection of any debts.

20          The complaint alleges that the defendant's principal

21     if not sole business purpose is the collection of defaulted

22     consumer debts originated by others.

23          Why isn't that enough to -- on -- on a motion to

24     dismiss, this isn't summary judgment, motion to dismiss, to --

25     to vest this Court with jurisdiction over this case and to

1  make the defendant a debt collector subject to the FDCPA?

2          MR. LITTLE:  For two reasons, Judge.

3          First, the McAdory decision from the District of

4  Oregon and Schneider, which follows McAdory, says as a matter

5  of law a passive debt buyer --

6          THE COURT:  How do I know --

7          MR. LITTLE:  -- cannot be --

8          THE COURT: -- that JTM is a passive debt buyer?

9          MR. LITTLE:  Because Schneider says so.  There's a --

10  JTM was granted summary judgment out in the District of Oregon

11  saying that it's not -- it is a passive debt buyer and not

12  subject to the --

13          THE COURT:  How is that--

14          MR. LITTLE:  -- FDCPA --

15          THE COURT:  -- binding on me?

16          MR. LITTLE:  It's not binding, Judge, it is

17  persuasive authority.

18          But the second reason is JTM also was granted -- a

19  motion to dismiss was granted in its favor in the Middle

20  District of Florida --

21          THE COURT:  So what?  I have no idea what the

22  circumstances of those cases are.  Aren't I bound by the

23  pleadings in this case?

24          I mean, you say to me in your reply memorandum:  The

25  2nd Circuit has yet to address whether the FDCPA governs a

1    debt buyer like JTM who does not engage in the actual

2    collection of debt and does not interact with the consumer.

3          How do I know that's the case?  What facts do I have

4    in front of me to -- to -- based on the pleadings as they

5    stand right now, what facts do I have in front of me that

6    allow me to conclude that JTM is a debt buyer that does not

7    engage in the actual collection of debt and does not interact

8    with the consumer?

9          MR. LITTLE:  I understand, Judge, that you're bound

10    by the four corners of -- of the complaint.  But Iqbal and

11    Twombly say we must have some factual basis in order to

12    support that conclusion.

13          Parroting the statute and saying JTM is a debt buyer

14    because its principal purpose is the collection of debts is a

15    mere recitation of the statute.

16          We have to have a factual basis to support that

17    conclusion.  And that's what -- I know the decision is not

18    binding on you, but that's what the Heath decision said in the

19    Middle District of Florida.

20          THE COURT:  So you're tell me that I should find

21    facts in this case based on facts that another district court

22    found?

23          MR. LITTLE:  I'm not asking you to find facts, Judge,

24    I'm --

25          THE COURT:  Sure you are.

1          MR. LITTLE:  -- asking that the plaintiff -- the

2     complaint must plead facts.

3          THE COURT:  It did.  It did.  The complaint pled that

4     the defendant's principal business purpose is the collection

5     of defaulted consumer debts, that the -- that the defendant's

6     collection communications made the plaintiff believe that her

7     demand with them, that -- that she, that her lawyer I guess

8     had sent to them had been futile.  By -- that -- that the

9     defendant, by directly communicating with the plaintiff

10    regarding the debt and demanding payment, violated the FDCPA.

11    So the defendant directly communicated with the plaintiff.

12         How do I find -- I mean, I -- I -- I understand your

13    argument, and I think your argument may well be grounds for a

14    good summary judgment motion, but I just don't for the life of

15    me see how it's -- how it's -- and not on the -- not for the

16    reasons that the magistrate judge found.  I mean, I think

17    whether or not a passive debt collector is liable under the

18    FDCPA is an interesting question, but I don't see how I even

19    get there based on the four corners of the complaint here.

20         MR. LITTLE:  Judge, what you are reading from the

21    recitation of the complaint, and I guess the -- there is no

22    factual pleading that JTM ever had any communication with

23    the -- with the consumer.  If you read the entire complaint,

24    JTM was a passive debt buyer and purchase charged-off

25    receivables and it outsourced it to a thirty-party debt

1    collector.  So --

2              THE COURT:  So let me ask you this:  Suppose --

3    suppose I'm a company that purchases and collects debts

4    myself.  Okay?

5              MR. LITTLE:  I'm sorry, can you repeat --

6              THE COURT:  I'm a company.  I own a company.  And

7    my -- the sole purpose of my company is to purchase and

8    collect debts.  Okay?

9              MR. LITTLE:  Okay.

10             THE COURT:  That's -- that's what my company does, it

11   purchases debts from -- from --

12             MR. LITTLE:  Banks.

13             THE COURT:  -- creditors, yeah, from banks, and then

14   it collects them.  That's what it does for a living.  I'm a

15   debt collector under the statute, right?

16             MR. LITTLE:  If you're actually sending letters and

17   making telephone calls --

18             THE COURT:  Yep.

19             MR. LITTLE:  -- absolutely.

20             THE COURT:  Yep.

21             Okay.  Now let's suppose that I hire a law firm to

22   collect some of the debts for me.  Okay?  I'm still a debt

23   collector, right?

24             MR. LITTLE:  I would disagree with that, Judge.

25             THE COURT:  I'm not a debt collector anymore?

1          MR. LITTLE:  You are not.

2          The statute specifically -- in our -- McAdory and our

3  interpretation of the statute, says that if you outsource it

4  to a third-party lawyer or you outsource it to a third-party

5  debt collector, you no longer are a debt collector --

6          THE COURT:  But I'm --

7          MR. LITTLE:  -- as defined --

8          THE COURT:  -- sending letters to these 300 people

9  over here collecting debts.

10          MR. LITTLE:  Your lawyers are.

11          THE COURT:  No, no, I am.

12          MR. LITTLE:  Oh, okay.  Yeah.

13          If you -- if you were a debt buyer and you are

14  actually sending the letters, I would agree, you are a debt

15  collector.

16          THE COURT:  Okay.  So I'm sending letters to these

17  300 people over here --

18          MR. LITTLE:  Yes, I would agree.

19          THE COURT:  -- but I've hired lawyers to send letters

20  to these ten people over here --

21          MR. LITTLE:  Yes.

22          THE COURT:  -- okay, I'm still a debt collector.

23          MR. LITTLE:  I would agree.

24          THE COURT:  Okay.  Now I tell me lawyer there's a

25  debt that -- it's already been paid, but I think the guy is

1 old and I think that he's gonna pay it twice, so send him a

2 letter.  Send him a letter telling him that we want to collect

3 the debt.

4       I'm a debt collector, because I'm sending my letters

5 to these 350 people, and I've now involved my lawyer.  I

6 haven't -- I haven't actually sent a letter to this person.

7 Am I liable under the FDCPA?

8       MR. LITTLE:  I would -- I would say that you are a

9 debt collector.

10       THE COURT:  How do I know that -- that your client is

11 not that person?

12       MR. LITTLE:  Because we have to look at the way the

13 complaint is pled.  And there are no facts to support that JTM

14 is that person or is that company.

15       THE COURT:  The complaint says that JTM's sole

16 business is the collection of debts.

17       MR. LITTLE:  I under -- I -- I -- I hear you, Judge.

18 I understand that.  But if Iqbal and Twombly allowed us just

19 to parrot the statute, then every case we wouldn't need

20 motions to dismiss because everyone could just conclusory

21 plead what they want in the statute and would survive a

22 12(b)(6) and would have to go through discovery.

23       So I understand what Your Honor's saying, but I'm

24 saying, Judge, there's got to be some kind of a factual basis.

25 You just can't conclude and parrot the statute to draw the

 1    conclusion.

 2          If there is a -- if there is a factual basis, and I'd

 3    say there isn't any, because if you read the entire complaint

 4    there's not one shred of evidence that says JTM sent a letter,

 5    made a telephone call or interacted with the plaintiffs

 6    specifically in both cases or plaintiffs generally.  And

 7    that's why I submit to you that it's ripe for a 12(b)(6) --

 8          THE COURT:  Okay.  Let me -- let me hear from -- let

 9    me hear from the plaintiff.

10          MR. BROMBERG:  Good morning, Your Honor.  Brian

11    Bromberg for the plaintiffs.

12          Your Honor, the term "passive debt buyer" is not used

13    anywhere within the statute.  It doesn't appear anywhere.  It

14    talks about in the first prong of the debt collector

15    definition, any person who uses any instrumentality of

16    interstate commerce or the mails and any business the

17    principal purpose of which is the collection of any debts.

18          And from the limited discovery we were allowed to get

19    into here, we know that -- well, first of all, attached to the

20    complaint is a copy of licensing documents from the State of

21    Illinois where the defendant is listed as a debt collector.

22    That's attached as an exhibit to the complaints.

23          In addition, we know from the limited discovery we

24    took, and this is referred to on document 32, page 8 we refer

25    to it, and then we have attached as docket 15-1 and 13-1

1  responses to interrogatories.  The defendant admitted that for

2  consumers with Illinois addresses alone it had purchased

3  13,230 defaulted accounts with a face value of approximately

4  $10,700,000 during 2016, and 13,387 accounts with a face value

5  of $11 million during 2017.

6          So that's in the interrogatory responses to

7  interrogatories numbers 3 and 4 attached to the papers that

8  are on file with the Court.  So even --

9          THE COURT:  But -- go ahead.  Go ahead.

10          MR. BROMBERG:  -- even the limited discovery we've

11  taken so far shows that they're purchasing these accounts for

12  the purposes of collection.  And we're talking about millions

13  of dollars.

14          THE COURT:  If I -- if I simply buy debt and buy it

15  as an investment, don't do anything to collect it, because I

16  think that they're going to appreciate in value and then sell

17  them, and then sell that debt later on; or -- or I think I got

18  a great deal on debt, I -- I see someone who has -- I see a

19  bank that for whatever reason needs -- needs money, needs

20  resources, and they're selling debt at what I see to be a

21  tremendous discount, so I buy it on Friday and on Monday I

22  sell it to someone else.  Am I a debt collector?

23          MR. BROMBERG:  Is any of the debt being sent out to

24  any law firms or any collectors?

25          THE COURT:  No.  I just buy it -- I just buy it so

1  that it appreciates in value.

2       MR. BROMBERG:  Under those limited circumstances, you

3  would probably not be a debt collector.

4       THE COURT:  Okay.

5       MR. BROMBERG:  Now the --

6       THE COURT:  So, the --

7       MR. BROMBERG:  Okay.

8       THE COURT:  -- so what did JTM do that made it a --

9  let me ask the question in two ways.

10      First of all, you say they're registered as a debt

11  collector in Illinois?

12      MR. BROMBERG:  Yes.

13      THE COURT:  What does that mean?  What's the

14  definition of "debt collector?"  I mean, it seems pretty

15  obvious, someone who collects debt.  But is there a definition

16  of "debt collector" in Illinois that they would have to meet

17  in order to be registered as a debt collector?

18      MR. BROMBERG:  I would have to look it up, Your

19  Honor.  I guess I probably should have, but I --

20      THE COURT:  No, that's okay.  That's okay.

21      And then, number 2, what do you allege that the

22  defendants did here that made them different than the

23  hypothetical that I just posed to you?

24      MR. BROMBERG:  That they bought the debt for the sole

25  purpose of collection.

1          THE COURT:  But they don't do anything to collect the

2     debt.

3          MR. BROMBERG:  Well, they do, Your Honor.  They send

4     it out.  They outsource it to law firms.  They outsource it to

5     debt collectors to make the collections.

6          THE COURT:  Why don't you sue the law firm?

7          MR. BROMBERG:  I believe they may have -- they may

8     have been sued already.  This is a separate action against

9     the -- against the collector, against -- against JTM.

10          THE COURT:  So -- so if I am a -- if I buy a debt and

11     I send it to a law firm to collect and the law firm violates

12     the FDCPA, are you saying I'm responsible for that -- for that

13     law firm's violation?

14          MR. BROMBERG:  Yes.  That's --

15          THE COURT:  Why?

16          MR. BROMBERG:  -- precisely --

17          THE COURT:  Why?  Why should I be responsible?  I

18     mean, I've hired someone to do it for me.  I didn't violate

19     the FDCPA.

20          MR. BROMBERG:  Well, Your Honor, typically principals

21     are responsible for the actions of their agents.  And here we

22     have the company, we have JTM purchasing the debt and sending

23     it out to a law firm to send letters.  They're responsible for

24     the actions of their agents.  You just can't send it out to a

25     debt collect -- you know, to a law firm and wash your hands of

1  it and say sorry.

2       And they fall within the definition.  Since they fall

3  within the definition of debt collector, then under the Act

4  they're responsible.  We don't have to show any kind of

5  vicarious liability under Your Honor's recent decision in

6  McCrobie.  I think that's been established.

7       In addition, the 3rd Circuit, which has analyzed

8  these matters most closely, has stayed away from the idea that

9  you have to show any kind of piercing of the veil or anything

10  of that sort --

11       THE COURT:  We're not --

12       MR. BROMBERG:  -- in order to --

13       THE COURT:  -- talking about piercing of the veil,

14  though.  I mean, the person who violated the FDCPA is the law

15  firm or the collection agency to whom the debt was sent.

16       MR. BROMBERG:  Yes, but they were --

17       THE COURT:  So suppose -- suppose -- so, I've got a

18  printing business.

19       MR. BROMBERG:  Um-hum.

20       THE COURT:  I've got a printing business.  And I've

21  got a whole bunch of people that owe me money in my printing

22  business, and I hire someone to collect that debt, and that

23  person violates the FDCPA.  I'm not responsible for that,

24  right?

25       MR. BROMBERG:  Well, Your Honor, the printing

1   business, that is the actual creditor.  The printing business

2   is the actual creditor there.

3           In this circumstance, we've got a company that

4   purchases the debt for the sole purpose of sending it out for

5   collection.

6           THE COURT:  But they're the actual creditor, too,

7   aren't they?  I'm a printing business, and I have debts and I

8   sell my debts to a company like JTM who then sends it to

9   somebody else to collect it.

10          MR. BROMBERG:  Yeah, but it -- Your Honor, that

11  circumstance, the printing business -- it's funny you should

12  mention that, I used to represent printing businesses and

13  binders.  But --

14          THE COURT:  I used to be a printer, so, that's why

15  I --

16          MR. BROMBERG:  The printing business, it would not be

17  their -- their principal purpose would not be the collection

18  of debt.  Their principal purpose is to sell people -- to sell

19  people books.  If they fail to pay, then -- then they stand

20  like any other creditor.

21          But in this case, the portfolios are being purchased

22  for the purpose of collection.

23          THE COURT:  Do we know whether JTM does anything to

24  collect the debts other than send them to another company to

25  collect them?

1    MR. BROMBERG:  We have no evidence that they do

2  anything other than try and outsource it and try and create

3  this passive debt chimera.

4    In any event, though, they're not buying it to sit on

5  it.  It's not like baseball cards or antiques where they're

6  buying it and sitting on it and hoping that it will

7  appreciate.  As a matter of fact, the longer you sit on a

8  debt, the less valuable it becomes.  The closer to the statute

9  of limitations, the more difficult to collect.  If it goes

10  beyond the statute of limitations, then the value of the

11  portfolio drops preciptiously and good luck collecting it.

12    I mean, I think really a lot of this -- a lot of

13  these matters have been laid to rest by the Barbato case from

14  the 3rd Circuit that I filed yesterday.

15    THE COURT:  You think -- and I saw that.  I saw that

16  filing.  Do you think that I need to make a decision on this

17  passive-debt issue to decide the motion to dismiss here?

18    MR. BROMBERG:  Oh, no.  No.  Passive debt doesn't

19  appear anywhere in the statute.  It doesn't even -- and in

20  addition, Your Honor, this is a 12(b)(6) motion.  As Your

21  Honor can see from the limited discovery we managed to take,

22  we've already found substantial evidence that they're -- that

23  they are -- that the principal purpose of JTM is the

24  collection of debts.  They've got no other reason for

25  existing.  It's their raison d'etre is the --

1    THE COURT:  The 3rd Circuit case that you submitted

2   is -- the 3rd Circuit case you submitted was a summary

3   judgment context as well, wasn't it?

4    MR. BROMBERG:  Let me double check, Your Honor.  It

5   just came to my attention recently, I was at a conference and

6   it was brought to my attention.

7    MR. LITTLE:  It was a summary judgment case, Judge.

8    MR. BROMBERG:  Yes.  So, I don't see any reason to

9   reach it at this juncture.  To reach any of these issues at

10  this juncture would --

11    THE COURT:  Do you have any cases, Mr. Little,

12  where -- where this was resolved on a motion to dismiss, the

13  12(b)(6)?

14    MR. LITTLE:  McAdory, Judge.  McAdory, the lead case

15  from the District of Oregon, Judge Hernandez decided as a

16  matter of law on a 12(b)(6).  There, the plaintiff moved for

17  reconsideration and, again, on reconsideration Judge Hernandez

18  says no, I'm deciding this -- I can decide this as a matter of

19  law.

20    In fairness, that is up on appeal through the 9th

21  Circuit as we speak.  But Judge Hernandez decided this as a

22  matter of law.

23    THE COURT:  What did the complaint plead in that

24  case, do you know?

25    MR. LITTLE:  Exactly the same -- not exactly the

 1  same, the same context.  There -- I was -- I was the lawyer on

 2  that case, so I'm very familiar with the facts.

 3         The defendant, a debt buyer like JTM Capital,

 4  purchased charged-off receivable, outsourced it to a third

 5  party.  The third-party debt collector was accused of

 6  violating the FDCPA by letter, telephone call.  And those are

 7  essentially the same facts here.

 8         There was no facts in that complaint like this

 9  complaint, as my adversary just indicated, that there's any

10  evidence that JTM does anything other than acquire the

11  receivables.

12         THE COURT:  Okay.  So here's what I want to do.  I'd

13  like the plaintiff to submit to me what the registration as a

14  debt collector in Illinois means.  What's the definition of a

15  debt collector.

16         Is your client registered as a debt collector in

17  Illinois?

18         MR. LITTLE:  It is, Judge.

19         THE COURT:  Are they registered as debt collectors

20  anywhere else?

21         MR. LITTLE:  They are, because some states define

22  debt collector as a buyer and a debt collector and requires

23  the state -- so, in the McAdory decision on reconsideration,

24  that was one of the things that Judge Hernandez looked at.

25  The plaintiff said hey look, D&F, the debt buyer, is

1  registered as a debt collector in these states, and Judge

2  Hernandez says it doesn't make a difference, they're required

3  to be registered as a debt collector because they define debt

4  collector/debt buyer as one and the same, so they're required

5  to get a license.

6          I need to look at this as under the federal statute

7  because some states say they're debt collectors --

8          THE COURT:  I understand.  Okay.  So -- so, I'd like

9  to -- not just Illinois, you can submit whatever states that

10 the defendant's registered in, whatever -- what debt collector

11 means in those states.

12         MR. BROMBERG:  Your Honor, I would need a list of

13 states in which they're registered.

14         MR. LITTLE:  I -- I -- I can find out.  I don't know

15 off the top of my head as to which states that they're -- that

16 they maintain licenses in.

17         THE COURT:  Okay.  And I'd like that from you.

18         MR. LITTLE:  Sure.

19         THE COURT:  Okay?  And you can let your friend on the

20 other side know --

21         MR. LITTLE:  Of course.

22         THE COURT:  -- as well.

23         And then from you, I'd like any cases, you've given

24 me the case from Oregon.  I'd like any other cases where this

25 has been resolved on a Rule 12 motion --

1        MR. LITTLE:  Okay.

2        THE COURT:  -- and not on summary judgment.  As you

3   can tell from my questions, I really think this is summary

4   judgment stuff and not motion to dismiss stuff.  And that's

5   not to say I don't think that you have a good summary judgment

6   motion, I don't know, but I -- but I -- but I think we're

7   getting ahead of ourselves in addressing this passive debt

8   collector issue at motion to dismiss stage.  I think that is a

9   summary judgment issue.

10       But -- but I want to see what you have.  I want to

11  see the case law that you have.  And, obviously, if there's

12  any surrogate case law that you have, I would like to see that

13  as well.

14       MR. LITTLE:  Yeah.  I'm only aware of Barbato which

15  came out three weeks ago.  McAdory will be decided by the 9th

16  Circuit shortly, as we're --

17       THE COURT:  Yep.

18       MR. LITTLE:  -- briefing issue.

19       THE COURT:  Okay.

20       MR. LITTLE:  So --

21       THE COURT:  Great.  How much time do you need?

22       MR. BROMBERG:  Well, I need the list first of the --

23       THE COURT:  Okay.

24       MR. BROMBERG:  -- various states.

25       THE COURT:  You can get him the list in --

1      MR. LITTLE:  A week.

2      THE COURT:  Okay.  So you've got a week to give him

3  the list.  Today's the 15th, you've got until the 22nd.

4      What do you need?

5      MR. BROMBERG:  Two weeks, Your Honor.

6      THE COURT:  Okay.  So what's two weeks from the 22nd?

7      THE CLERK:  April 5th.

8      THE COURT:  April 5th?  And how much time do you need

9  to get me the case law?

10      MR. LITTLE:  And I -- two weeks after the 5th, would

11  that be fine?  And then do I have a chance --

12      THE COURT:  Do you want to reply?

13      MR. LITTLE:  -- to reply to the --

14      THE COURT:  Fine.  Fine.  So two weeks after the 5th.

15  That's the 19th, if my math is correct.  And then the 26th for

16  any reply from you.  Okay?

17      MR. BROMBERG:  Okay.  Your Honor, I believe I may be

18  away for the Passover holiday.

19      THE COURT:  Okay.

20      MR. BROMBERG:  So if it's possible to add a week to

21  that?

22      THE COURT:  Yeah, sure.  May 3rd.

23      MR. BROMBERG:  Thank you, Your Honor.

24      THE COURT:  Okay.

25      MR. BROMBERG:  And, Your Honor, I know we didn't

1  touch on a lot of the briefing, the substantial briefing.  I

2  just want to make sure that any arguments that were made are

3  preserved.

4        THE COURT:  They're all preserved.  I mean, if you

5  folks want to talk to me more, talk to me more.  I'm not -- I

6  don't want to cut you off.

7        MR. BROMBERG:  No, no, no.

8        THE COURT:  But you understand what's on my mind, and

9  how I'm approaching this.  So -- but I don't want to cut

10 anybody off from the arguments that they want to make.  If

11 you've got more you want to say, say it.

12       MR. LITTLE:  No, Judge.  I think that I will

13 respond -- there was a motion made late last night, as Your

14 Honor recognized, for leave to file supplemental authority on

15 Barbato.  I agree it touches on this issue.  I will oppose

16 that motion and explain why Barbato does not apply, and I

17 think that the papers will be clear in that regard.  But I --

18       THE COURT:  Yeah.  Well, you're not -- you're not

19 opposing the motion to submit the supplemental authority, you

20 want to argue that Barbato doesn't --

21       MR. LITTLE:  Correct.  Yeah.  I don't think I have

22 any basis to argue that -- to object to the supplemental

23 authority --

24       THE COURT:  Right.

25       MR. LITTLE:  -- I just needed to point out as to why

1   it --

2           THE COURT:  Absolutely.  Absolutely.  Yeah.  But

3   we've got a briefing schedule, so you folks can -- and you're

4   not limited by what I said I'd like submitted from you.  You

5   can put anything in these papers that you want to put in.

6           MR. LITTLE:  Understood.

7           THE COURT:  Especially because we've got, you know,

8   papers coming and then a response and then a reply, you guys

9   can do whatever arguing you want to do.  But I will reserve

10  decision.  I don't think I'm going to have oral argument again

11  because I think I've got plenty that I can base my decision

12  on.  And I'll reserve and issue a decision after you folks

13  make your submissions.

14          MR. LITTLE:  Yeah.  The only other point I want to

15  make in closing is I think my adversary indicated that there

16  is no evidence that JTM does anything other than by the

17  receivables, because I know Your Honor was reading from the

18  complaint indicating about sending letters and having

19  telephone conversations, but it's my point that there are no

20  facts which I think --

21          THE COURT:  I hear you.

22          MR. LITTLE:  -- would apply in spite of a 12(b)(6).

23          THE COURT:  I hear you.

24          MR. BROMBERG:  Your Honor, if I may, that's not what

25  I said.  I didn't say that all they did was buy receivables, I

```
 1  said they buy receivables and outsource them for collection.
 2          THE COURT:  Right.
 3          MR. BROMBERG:  Okay.
 4          THE COURT:  No, no, and I don't think that --
 5          MR. LITTLE:  And I agree with that.
 6          THE COURT:  Yeah, I don't think he's arguing against
 7  that.  I think he's saying that the collection of the debt is
 8  the outsourcing.  They don't do anything to collect the debt
 9  other than outsource.  In other words, they buy the debt, and
10  then they hire someone else to collect that debt, right?
11          MR. BROMBERG:  Yes.  But the degree of involvement
12  they have in that collection is still --
13          THE COURT:  I understand.
14          MR. BROMBERG:  Okay.
15          THE COURT:  No, I get it.  I get it.  Which is,
16  again, why I started the way I started here, and that is that
17  I think this is summary judgment stuff, it's not -- it's not
18  motion to dismiss stuff.
19          So, but I'll be interested to read what you folks
20  send me.
21          MR. LITTLE:  Thank you, Judge.
22          MR. BROMBERG:  Thank you, Your Honor.
23          THE COURT:  Terrific.  Thank you both.
24          (Proceedings concluded at 11:56 a.m.)
25          *     *     *     *     *     *     *
```

1                    CERTIFICATION

2

3          I certify that the foregoing is a

4    correct transcription of the proceedings

5    recorded by me in this matter.

6

7

8

9                    s/ Ann M. Sawyer
                     Ann M. Sawyer, FCRR, RPR, CRR,
10                   NYRCR, NYACR, Notary Public
                     Official Reporter
11                   U.S.D.C., W.D.N.Y.

12

13

14

15

16

17

18

19

20

21

22

23

24

25